

Anthony J. Davis, Esq. (#033811992)
Alashia L. Chan, Esq. (#015391994)
1 Gatehall Drive, Suite 100
Parsippany, New Jersey 07054
(201) 712-1616
Attorneys for Plaintiff Above And Beyond -
Business Tools and Services for Entrepreneurs, Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ABOVE AND BEYOND - BUSINESS TOOLS AND SERVICES FOR ENTREPRENEURS, INC., | Civil Action No:_____ |
| PLAINTIFF, | **COMPLAINT** |
| vs. | |
| DAVID TRUMBO, | |
| DEFENDANT. | |

Plaintiff, Above And Beyond - Business Tools and Services for Entrepreneurs, Inc. ("Beyond" or "Plaintiff"), through its attorneys, Santomassimo Davis LLP, by way of Complaint against Defendant David Trumbo ("Trumbo" or "Defendant"), says as follows:

### INTRODUCTION

1.      Beyond brings this action against its former employee, Defendant David Trumbo, who was a Team Leader at Beyond managing sales and sales representatives, and who now works for a direct competitor of Beyond named Iozona, LLC, doing business under the trade name PayCompass Financial Services, which is based in Phoenix, Arizona ("PayCompass").

2.      Since leaving his employment with Beyond, Trumbo has breached his post-employment non-solicitation covenants contained in his employment agreement, has misappropriated Beyond's confidential information, and has tortiously interfered with Beyond's contractual and business relations and prospective economic advantage.

3.      Beyond and Trumbo entered into a valid written employment agreement on January 31, 2018 (the "Employment Agreement"), a true copy is attached hereto as **Exhibit A**.

4.      Beyond seeks monetary damages, injunctive relief as well as attorneys' fees, costs of suit and expenses incurred by it in this litigation as authorized and agreed upon in the Employment Agreement.

## <u>PARTIES</u>

5.      Beyond is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business located at 902 Carnegie Center, Suite 160, Princeton, New Jersey 08542.

6.      Defendant David Trumbo is a natural person residing at 8605 West Maple Street, West Allis, Wisconsin 53214, and was employed by Beyond as a Team Leader and a sales representative.

7.      Trumbo currently works for PayCompass, which is an Arizona limited liability company, headquartered at 4747 East Elliot Road, Suite 29-440, Phoenix, Arizona 85044.

8.      PayCompass is a direct competitor of Beyond and was founded by, and is being operated by, Mr. Justin Volrath.  Mr. Volrath is also a former Beyond employee.

9.      PayCompass markets the electronic payment solutions of a company named Priority Technology Holdings, Inc. a/k/a/ Priority Payment Systems, LLC (collectively "Priority").

10.    In the electronic payment industry, Priority is what is known as an independent sales organization or "ISO" based in Alpharetta, Georgia.  Priority states on its website (https://www.pps.io) that:  "Priority Payment Systems, LLC is a registered ISO/MSP of each of Wells Fargo Bank N.A., Concord, CA; Synovus Bank, Columbus, GA; Citizens Bank, N.A., Providence, RI; Axiom Bank, N.A., Maitland, FL; and PB&T Bank, Pueblo, CO."

11.    An ISO is a company authorized to handle merchant accounts for businesses but does not deal directly with the card brands like VISA and MasterCard.

12.    PayCompass is what is known as a sub-independent sales organization or "Sub-ISO" with a relationship with Priority.  PayCompass holds itself out as an independent company selling payment process solutions which are processed through Priority.

13.    Trumbo is currently a sales representative or is otherwise affiliated with PayCompass marketing and selling its services as a Sub-ISO of Priority in direct competition with Beyond.

14.    Based upon information and belief, PayCompass also employees or is currently affiliated with numerous other former Beyond employees such as Joe Paddock, Shan Abassi, Misay Khoundara, Ira Cornelius, Justin Bohl, Dillon Lockhart, Alan Bernard, Terry Rokusek, Dustin Robinson, Jim Kirchoff, Nicholas Goeman, William Chieves as well as others who are actively marketing and selling PayCompass' services as a Sub-ISO of Priority in direct competition with Beyond.

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a).

16.    Complete diversity exists because Trumbo is a citizen of Iowa and Beyond is a citizen of New Jersey.

17. The amount-in controversy requirement exceeds $75,000, exclusive of interest and costs, because Beyond seeks injunctive relief and monetary damages, the combined value of which exceeds $75,000.00.

18. Trumbo is subject to the personal jurisdiction of this Court because he consented to and submitted to the personal jurisdiction and venue of this Court when he signed his Employment Agreement with Beyond.

19. More specifically, Section p of the Employment Agreement with Beyond provides that the exclusive and convenient forum and venue for any disputes between the parties arising out of such agreements shall be any proper state or federal court for Mercer County, New Jersey, and the parties expressly submitted to the personal jurisdiction of this Court by entering into the Employment Agreement. See Exhibit A at ¶ p.

20. The subject Employment Agreement further states that it shall be governed by and construed in accordance with the laws of the State of New Jersey, and that no conflict-of-law provisions shall be invoked to permit the application of the laws of any other state or jurisdiction. See Exhibit A at ¶ p.

## BACKGROUND

21. Beyond is primarily engaged in the nationwide business of marketing and providing electronic payment transaction processing services for businesses, also known as merchants, that accept payment for goods and services through credit and debit cards.

22. Beyond's customers are comprised of small and mid-size merchants operating in a wide array of industries, including, but not limited to, restaurants, autobody shops, retail stores, and beauty salons, and are located throughout the United States.

23.     Beyond has been doing business since 2017 and has worked hard to build its strong reputation in the industry and to achieve recognition in the financial services and payment processing industries among its target demographic of merchants.

24.     Beyond's industry is extremely competitive and merchants have their pick from numerous credit card processing companies.

25.     Beyond employs a nationwide salesforce to sell its services to merchants around the country and offers a generous compensation package, including offering an upfront advance Signing Bonus equal to 50% of estimated gross profit for the first year of processing in addition to monthly residual payments and, once an employee is vested, residuals that continue for the lifetime of the merchant relationship even if the employee terminates his or her employment.   On top of this, employees are eligible for portfolio buyouts through which Beyond makes an upfront payment to the employee equal to thirty times the monthly residuals generated from the merchant accounts.

26.     As a result, Beyond places significant value upon its goodwill and business relationships, and employees of Beyond know that by the very nature of their employment they are entrusted with, and are given access to, Beyond's most proprietary and confidential information.

27.     Accordingly, Beyond requires every employee, like Trumbo who was in a sales and management positions with Beyond, to sign a written employment agreement that contains business protection covenants, namely an agreement by the employee to refrain from soliciting Beyond customers and employees for twelve (12) months and twenty-four (24) months, respectively, as well as an express covenant not to use any confidential information learned or

obtained while employed with Beyond for three (3) years following the termination of their employment.

28.     In the Employment Agreement, Beyond's managers like Trumbo acknowledge and agree that Beyond will be entitled to temporary, preliminary and permanent injunctive relief as well as money damages for breaches of these covenants as set forth in detail in the agreement.  See Exhibit A at ¶ i.

## TRUMBO'S EMPLOYMENT WITH BEYOND

29.     On or about January 24, 2018, Trumbo became employed by Beyond as a Business Advocate marketing and selling Beyond's services to merchants and was promoted to the position of Team Lead managing sales and sales representatives.

30.     On January 31, 2018, Trumbo entered into the written Employment Agreement with Beyond and it provided the terms and conditions of his employment.

31.     Section h of the Employment Agreement provides certain "Business Protection Covenants," in which Trumbo acknowledged and agreed, among other things, that as an employee of Beyond, he is responsible for and directly involved in developing goodwill and business relationships for the benefit of Beyond.  See Exhibit A at ¶ h.

32.     Section h of the Employment Agreement further states that Trumbo is responsible for the operation of Beyond's business and the development of customers, he will be entrusted with, and has knowledge of, Beyond's most proprietary and valuable confidential information; and he will gain unique insight into and knowledge of the skills, talents and capabilities of Beyond's employees and independent contractors.  Id.

33.     Specifically, the Employment Agreement contains a "**Non-Solicitation of Customers**" provision that states that during Trumbo's employment with Beyond, and for a period

of **twelve (12) months** after termination of his employment for any reason, he is prohibited from, directly or indirectly, soliciting, enticing, or inducing any Beyond customers to: (A) become a merchant of any other person or entity engaged in any business activity that competes with any business conducted by Beyond, OR (B) cease doing business with Beyond.  See Exhibit A at ¶ h.i.a.i.

34.    In addition, Trumbo agreed to the not solicit Beyond merchants for which Trumbo had been paid compensation from Beyond for a period of **thirty (30) months** under the same terms as set forth above.  See Exhibit A at ¶ h.i.a.i.

35.    For the purposes of this "Non-Solicitation of Customers" provision, the Employment Agreement defines Beyond's customers as "any customer, client, merchant, or other party having a contractual or business relationship with [Beyond], including referral relationships, to which [Beyond] is providing services."  Id.

36.    The Employment Agreement also contains a "**Non-Solicitation of Employees**" covenant that states that during Trumbo's employment with Beyond and for a period of twenty-four (24) months after termination of his employment for any reason, he is prohibited from, directly or indirectly, soliciting any employee or independent contractor of Beyond to work for a third party other than Beyond or engage in any activity that would cause any employee or independent contractor to violate any agreement with Beyond.  See Exhibit A at ¶ h.ii.b.

37.    The Employment Agreement further contains certain confidentiality obligations that prevent Trumbo from: (i) directly or indirectly revealing, reporting, publishing, disclosing or transferring Beyond's "Confidential Information" to any person or entity; (ii) using any of Beyond's "Confidential Information" for any purpose other than for the benefit of Beyond; or (iii)

assisting any person or entity other than Beyond to secure any benefit from Beyond's "Confidential Information." See Exhibit A at ¶ g and Page 4.

38.     As stated in Section g and on Page 4 of the Employment Agreement, Beyond invests considerable time and resources into developing and maintaining its "Confidential Information." Id.

39.     Beyond's "Confidential Information" is defined in the Employment Agreement as:

> Any confidential, proprietary and/or trade secret information of [Beyond] in any form that is not generally known by the public or in the industry, including, but not limited to, the following: information which [Beyond] designates as confidential, in writing; inventions and intellectual property; research and development information, reports plans and data; components, methods, and strategies; technical information about [Beyond]'s products and planned products; source code for applications an computer software; standard operating procedures; marketing, sales products, and business plans and strategies; pricing and pricing models; compensation plans and strategies; personnel and sales training information and materials; information about [Beyond]'s relationships and agreements with merchants, customers, suppliers, and vendors; any information not generally known by persons other than [Beyond] personnel or persons subject to confidentiality; confidential and proprietary information of [Beyond]'s affiliates, subsidiaries, and related companies; information provided to [Beyond] by third parties subject to an obligation or agreement to keep such information confidential; individual or consumer credit or financial account information, private financial or other legally protected information of individuals or businesses; tax and social security numbers; any information which [Trumbo] knows or should know that [Beyond] would not care to have revealed to competitors or others; and any confidential information which [Trumbo] makes, conceives or develops as a result of [Trumbo]'s relationship with [Beyond].

See Exhibit A at Page 4.

40.     Importantly, the Employment Agreement does not contain any covenant not to compete, and explicitly states the following:

> This Agreement is not intended to preclude [Trumbo]'s opportunity to engage in or otherwise pursue occupations in any unrelated or non-competitive field of endeavor, or to engage in or otherwise pursue directly competitive endeavors so long as they meet the requirements of this Agreement. [Trumbo] represents that [Trumbo]'s experience and abilities are such that the existence or enforcement of these covenants and promises will not prevent [Trumbo] from earning or pursuing

an adequate livelihood and will not cause an undue burden or economic hardship to [Trumbo] or [Trumbo]'s family.  [Trumbo] acknowledges that these covenants and promises (and their respective time, geographic, and/or activity limitations) are reasonable and that the limitations are no greater than necessary to protect [Beyond]'s legitimate business interests in light of [Trumbo]'s position with [Beyond] and [Beyond]'s business.

See Exhibit A at ¶ h.

41.    As such, Beyond has not imposed any post-employment restrictions on Trumbo that would hinder his ability to make a living or pursue other similar employment, and upon his separation from Beyond, he was free to work for a direct competitor of Beyond.  However, he agreed to not solicit Beyond's merchants or its employees after his employment ended as a material term and condition of his employment with Beyond.  Id.

42.    Additionally, the Employment Agreement states that Trumbo acknowledges that it would be difficult to calculate Beyond's damages should he breach his confidentiality obligations and/or his covenants not to solicit, and that money damages would therefore be an inadequate remedy.  See Exhibit A at ¶i.

43.    Accordingly, Trumbo acknowledged that upon such breach, Beyond may seek and shall be entitled to temporary, preliminary, and/or permanent injunctive relief against him, and/or other appropriate orders to restrain such breaches.  Id.

44.    Further, nothing in the Employment Agreement limits or prevents Beyond from seeking any other damages or relief provided by applicable law for breach of any section or provision of the Employment Agreement.  Id.

45.    The parties explicitly agreed in the Employment Agreement that Beyond may obtain specific performance, and that Beyond shall not be required to post bond in the event it is necessary for Beyond to obtain injunctive relief, any bond requirement is thereby expressly waived by Trumbo.  Id.

46.     Lastly, the Trumbo Employment Agreement provided that in any suit brought by one party against the other arising from, relating to or in connection with the Employment Agreement, the prevailing party will be entitled to recover all reasonable attorneys' fees, costs of suit and fees.  See Exhibit A at ¶ r.

47.     The Employment Agreement's restrictive covenants are reasonable and conform to New Jersey law and should be enforced as written.

## BEYOND'S PROPRIETARY AND CONFIDENTIAL INFORMATION AND TRUMBO'S ACCESS THERETO

48.     During and in the course of his employment at Beyond working as a sales manager, Trumbo gained substantial knowledge regarding Beyond's merchants, pricing terms, and sales force, and he developed and/or maintained relationships with Beyond's merchants and employees, all at Beyond's direction and expense and with Beyond's support.

49.     Before, during, and after Trumbo's employment with Beyond, Beyond devoted significant time and resources to developing and maintaining merchant accounts and to creating and maintaining an effective sales force, formulating sales strategies, and developing a sales and merchant support infrastructure.

50.     During and in the course of his employment with Beyond while a sales representative and as a sales manager, Trumbo was entrusted with and had access to Beyond's Confidential Information.

51.     Specifically, Trumbo was entrusted with and had access to "Confidential Information" including, but not limited to, the following:

      a. Extensive sales information regarding Beyond's merchants, including merchants' contract terms, account volume, chargeback percentage, fees,

margins, and the commissions generated by merchants for Beyond's employees;

b. Beyond's confidential pricing, marketing, and sales strategies, including nationwide strategies and those designed for particular merchants or geographic locations;

c. Beyond's business, marketing, and advertising plans, including plans for the generation of new merchant accounts and channels of business;

d. Beyond's current products, services, and other offerings, including knowledge of sales performance by offering, strengths and weaknesses of offerings, customer feedback, and year-over-year trends;

e. Beyond's product development, including information on products, services, and other offerings contemplated or in the development pipeline, new product launches, new sales initiatives, and the ways new offerings would be marketed to merchants; and

f. Beyond's methods of training, evaluating, developing, and compensating employees, including information about sales strategies, commission payments and negotiations, and sales-promotion activities.

52.     Before, during and after Trumbo's employment with Beyond, Beyond devoted significant time and resources to protecting its Confidential Information, including a requirement that all employees, like Trumbo, sign the Employment Agreement and agree to protect all of Beyond's Confidential Information and to resist any disclosures.

## TRUMBO TERMINATED HIS EMPLOYMENT
## AND IS NOW SOLICITING BEYOND EMPLOYEES AND CUSTOMERS

53.     On or about July 20, 2020, Trumbo voluntarily resigned from his position as a Team Leader with Beyond.

54.     As is its practice, shortly thereafter, Beyond sent a separation letter to Trumbo ("Trumbo Separation Letter") confirming the date of his voluntary separation from Beyond, advising of the date his medical and dental coverage would terminate, requesting he return all Beyond company materials and property, and reminding Trumbo of his post-employment obligations to Beyond pursuant to the terms of his Employment Agreement.

55.     The Separation Letter recited the Employment Agreement provisions that contained Trumbo's covenant not to solicit Beyond customers for a period of twelve (12) months generally and thirty (30) months for his merchants following termination and Trumbo's covenant not to solicit Beyond employees for a period of twenty-four (24) months following his termination.

56.     Shortly after terminating his employment with Beyond, Trumbo began working for PayCompass which is a direct competitor of Beyond.  Trumbo communicates using a PayCompass email, namely:  DTrumbo@PayCompass.com.  Attached as **Exhibit B** is a true and correct copy of Trumbo's publicly available LinkedIn profile displaying his current employment role with PayCompass as "Business and Payment Educator at PayCompass" in the "Greater Milwaukee Area" starting in August of 2020.

57.     Trumbo's current employment with PayCompass is not in and of itself a violation of his post-employment obligations to Beyond.

58.     However, Beyond has learned that since terminating his employment with Beyond, Trumbo has breached the Employment Agreement as he has been actively soliciting Beyond employees and customers and is using Beyond's Confidential Information in order to convert those

customers, who he signed on or helped sign on as merchants while employed by Beyond, over to PayCompass in direct violation of the Non-Solicitation of Customers covenant in the Employment Agreement.

59.     Based upon information and belief, Trumbo has contacted current Beyond employees and solicited them to work for PayCompass.   Trumbo solicited Beyond sales representatives and was enticing them to leave Beyond to work with Trumbo at PayCompass to compete with Beyond.

60.     Beyond has also confirmed that Trumbo has solicited Beyond's merchants including, but not limited to, a nail salon named Pretty Nails & Spa located in Mukwonago, Wisconsin in an effort to entice and induce them to switch their payment processing from Beyond to PayCompass.

61.     Trumbo also breached his obligations to Beyond by engaging in deceptive practices when he moves a Beyond merchant to his new company without the knowledge or authorization of Beyond's merchant.   Based upon information and belief, Trumbo has misled merchants by telling them he was changing their payment processing equipment at their business location without informing them that by switching their equipment he was terminating their relationship with Beyond and moving their payment processing to another company.

62.     Based upon information and belief, Trumbo is also sharing Beyond's confidential and trade secret information about its merchants and its employees with others who work for, or are affiliated with, PayCompass and Priority.  He is providing Beyond's confidential information to PayCompass and Priority's agents and employees who then use that information to solicit Beyond's merchants and employees.   The solicitations are being made to induce and entice the merchants and employees to work with Beyond's competitors.

63.     Despite being formally reminded and warned by way of a Cease and Desist letter on August 7, 2020 from counsel for Beyond, Trumbo has shown a wonton disregard for the Employment Agreement and engaged in conduct that is grossly violative of his post-employment covenants.

64.     In violating his non-solicitation covenants, Trumbo has also violated his confidentiality obligations to Beyond, as he has used Beyond's confidential information, including Beyond's customer contacts, pricing and other information about Beyond's relationships and agreements with merchants, to solicit, entice and induce Beyond's customers and convert them over to PayCompass.

## FIRST COUNT
### (Preliminary and Permanent Injunction)

65.     Beyond repeats and reiterates each and every allegation of the preceding enumerated paragraphs as set forth herein and at length.

66.     Trumbo should be enjoined from soliciting Beyond's employees and customers as agreed.

67.     The restrictive covenants Trumbo agreed to are reasonable and should be enforced in accordance with New Jersey law as provided in the subject Employment Agreement.

68.     Trumbo should be preliminarily and permanently enjoined from soliciting Beyond's customers for the twelve-month period and from soliciting Beyond merchants for which Trumbo had been paid compensation from Beyond for a period of thirty months as agreed to in the Employment Agreement.

69.     Trumbo should be preliminarily and permanently enjoined from soliciting Beyond's employees for the twenty-four-month period agreed to in the Employment Agreement.

70.     Trumbo should be preliminarily and permanently enjoined from using Beyond's confidential information he obtained as a result of his employment with Beyond for the three-year period agreed to in the Employment Agreement.

71.     Beyond has no adequate remedy at law and will suffer immediate and irreparable harm absent injunctive relief as prayed for herein.

**WHEREFORE,** Plaintiff Beyond seeks an order enjoining Defendant Trumbo from:

a.     directly or indirectly soliciting, enticing, or inducing any Beyond customer to (i) become a merchant of any other person or entity engaged in any business activity that competes with any business conducted by Beyond at any time during the period of each of the Former Employee's respective employment with Beyond, or (ii) cease doing business with Beyond, for the agreed twelve-month period;

b.     directly or indirectly soliciting any employee or independent contractor of Beyond to work for a third party other than Beyond or engage in any activity that would cause any employee or independent contractor to violate any agreement with Beyond for the agreed twenty-four-month period;

c.     using Beyond's confidential information obtained while an employee with Beyond; and

d.     awarding Beyond such other and further relief as the Court deems just and proper.

## SECOND COUNT
### (Breach of Contract)

72.     Beyond repeats and reiterates each and every allegation of the preceding enumerated paragraphs as set forth herein and at length.

73.     The Employment Agreement, and the business protection covenants contained therein, is a valid and binding contract.

74.     The Non-Solicitation covenants and confidentiality provisions contained in the Employment Agreement are reasonable in time and scope and are appropriately tailored to protect the legitimate business interests of Beyond.

75.     The non-solicitation covenants and confidentiality provisions contained in the Employment Agreement are reasonable, lawful, and enforceable restrictions on Trumbo and his post-employment activities especially while working for a direct competitor of Beyond.

76.     Beyond performed all of its obligations under the Employment Agreement.

77.     Based on the foregoing, Beyond is entitled to enforce the Employment Agreement.

78.     As detailed above, by soliciting Beyond employees and customers during the prohibited time periods after his employment with Beyond terminated, and improperly using Beyond's confidential information to do so, Trumbo has breached the Employment Agreement.

79.     As a result of each of the Trumbo's breaches, Beyond has suffered and continues to suffer substantial economic and monetary damages in an amount to be determined at trial and, unless restrained, each of their respective violations, unless enjoined, will continue, and cause Beyond to lose merchants and other customers and otherwise suffer irreparable injury to its business, reputation, and goodwill.

**WHEREFORE,** Plaintiff Beyond demands judgment against Defendant Trumbo for injunctive relief and monetary damages in an amount to be determined at trial together with interest, punitive damages, reasonable attorneys' fees, costs of suit and such other and further relief as the Court may deem equitable and just.

### <u>THIRD COUNT</u>
**(Unjust Enrichment)**

80.     Beyond repeats and reiterates each and every allegation of the preceding enumerated paragraphs as set forth herein and at length.

81.     Defendant has benefited from and has been unjustly enriched at the expense of and to the detriment of Beyond by wrongfully receiving compensation for the merchants and customers improperly solicited.

82.     Defendant has been unjustly enriched and wrongfully collected such compensation and, under the circumstances, has been unjustly enriched.

83.     Beyond is entitled to recover from Defendant all amounts wrongfully taken and improperly retained by Defendant, plus interest thereon.

84.     As a direct and proximate result of Defendant's unjust enrichment, Beyond has suffered monetary injury and seeks damages in the amount necessary to restore Beyond to the position it would be in had Defendant not been unjustly enriched.

**WHEREFORE,** Plaintiff Beyond demands judgment against Defendant Trumbo for monetary damages to be determined at trial together with interest, punitive damages, reasonable attorneys' fees, costs of suit and such other and further relief as the Court may deem equitable and just.

## FOURTH COUNT
### (Tortious Interference with Contractual and Business Relations and Prospective Economic Advantage)

85.     Beyond repeats and reiterates each and every allegation of the preceding enumerated paragraphs as set forth herein and at length.

86.     Beyond had or has existing contractual and/or employment relationships with its merchants and employees.

87.     Beyond had a reasonable expectation of economic benefit or advantage from its merchants and employees.

88.     These expectations are built on Beyond's current customers, its reputation in the industry, and its commitment to long-term partnerships with its current and future merchants and employees.

89.     Trumbo was and is aware of Beyond's contractual and/or employment relationships and its reasonable expectations of economic benefit or advantage from its merchants and employees.

90.     At the time Defendant made the improper solicitations alleged herein, Trumbo knew that Beyond had contractual relationships with the merchants, customers, and employees to which the solicitations were made and made such solicitations for the purpose of inducing and/or deceiving such merchants, customers, and employees so that they would terminate their existing contractual relationships with Beyond.

91.     By soliciting Beyond's merchants and employees to modify, breach, or terminate their contractual or employment relationships with Beyond, Trumbo has interfered (or imminently intend to interfere) with Beyond's contractual relationships, thereby undermining or destroying the intent and purpose of the contractual relationships.

92.     By soliciting Beyond's merchants and employees to modify, breach, or terminate their contractual or employment relationships with Beyond, Trumbo has interfered (or imminently intends to interfere) with Beyond's reasonable expectations of economic benefit or advantage from its merchants and employees.

93.     Trumbo's interference is wrongful, intentional, willful, and done with malice.

94.     As a result of Defendant's interference, Beyond's contractual relationships have been, or are imminently threatened to be, modified, breached, or terminated, and its reasonable expectations of economic benefit or advantage has been interfered with by Trumbo.

-18-

95.     Absent Defendant's interference, Beyond would have received the anticipated economic benefits or advantages from its merchants and employees.

96.     Defendant's conduct has resulted in immeasurable and irreparable injury to Beyond, including a loss of the benefit of its contractual relationships and a loss of its anticipated economic benefits or advantages from its merchants and employees.

97.     Unless Defendant's conduct is enjoined, Beyond will continue to suffer further immeasurable and irreparable injury.

98.     Beyond has no adequate remedy at law.

99.     Defendant's conduct was unjustified and done intentionally and maliciously causing injury to Beyond.

100.    As a result of each Defendant's aforesaid conduct, Beyond has suffered damage by reason of the termination of these existing contracts and/or refusal to enter into such contracts with Beyond.

101.    As a result of each Defendant's aforesaid conduct, Beyond has suffered damage by reason of the loss of employees who have left the employment of Beyond and began working for direct competitors such as PayCompass as aforesaid.

**WHEREFORE,** Plaintiff Beyond demands judgment against Defendant Trumbo for injunctive relief and monetary damages in an amount to be determined at trial together with interest, punitive damages, reasonable attorneys' fees, costs of suit and such other and further relief as the Court may deem equitable and just.

### SIXTH COUNT
**(Misappropriation of Proprietary and Confidential Information)**

102.    Beyond repeats and reiterates each and every allegation of the preceding enumerated paragraphs as set forth herein and at length.

103.    During and in the course of his employment with Beyond, Trumbo was entrusted with and had access to Beyond's proprietary and Confidential Information as detailed above and as set forth in the Employment Agreement.

104.    Beyond entrusted Trumbo with and gave them access to its proprietary and Confidential Information for the sole purpose of furthering its business and competitive interests.

105.    Beyond's proprietary and Confidential Information was and is not generally available to the public.

106.    Trumbo would not have been aware of Beyond's proprietary and Confidential Information if not for his employment with Beyond in violation of the covenants set forth in the Employment Agreement and discussed herein.

107.    Defendant's conduct constitutes an unlawful misappropriation of proprietary and confidential information and his continued possession and misuse of such information has caused and will continue to cause Beyond irreparable harm.

108.    Absent injunctive relief requiring Trumbo to return and cease using Beyond's proprietary and Confidential Information, Beyond will continue to suffer irreparable and immeasurable harm.

109.    Beyond has no adequate remedy at law.

**WHEREFORE,** Plaintiff Beyond demands judgment against Defendant Trumbo for injunctive relief and monetary damages in an amount to be determined at trial together with interest, punitive damages, reasonable attorneys' fees, costs of suit and such other and further relief as the Court may deem equitable and just.

## SEVENTH COUNT
### (Attorneys' Fees and Costs)

110.   Beyond repeats and reiterates each and every allegation of the preceding enumerated paragraphs as set forth herein and at length.

111.   Based upon the foregoing, Trumbo breached his Employment Agreement with Beyond resulting in this action being brought against him.

112.   The Employment Agreement explicitly provide for an award of reasonable attorneys' fees, costs of suit and fees to the prevailing party in any action arising from, relating to or in connection with the Employment Agreement.  See Exhibit A at ¶ r.

113.   By reason of the foregoing, and as a direct result of Trumbo's breaches, Beyond will has been damaged and will continue to incur attorneys' fees, costs of this suit and fees in bringing and prosecuting this action against the Trumbo for claims that all arise from, relate to and are in connection with the Employment Agreement.

114.   By reason of the foregoing, and as a direct result of Trumbo's breaches, Beyond will prevail in this litigation and be entitled to recover as damages all reasonable attorneys' fees, costs and fees in bringing and prosecuting this action against the Trumbo.

**WHEREFORE,** Plaintiff Beyond demands judgment against Defendant Trumbo for monetary damages in an amount to be determined at trial for all reasonable attorneys' fees, costs of suit, fees and such other and further relief as the Court may deem equitable and just.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Beyond respectfully prays for judgment against Defendant Trumbo as follows:

1.   That the Court enter judgment in favor of Beyond and against Defendant on all claims for relief made against Trumbo in this action;

2.     That the Court enter preliminary and permanent injunctive relief, including, but not limited to, requiring Trumbo, and all those working in concert with them, to abide by the terms of his Employment Agreement and to return and cease to use Beyond's proprietary and Confidential Information, this includes the requirement that Trumbo be enjoined and restrained from:

a.     directly or indirectly soliciting, enticing, or inducing any Beyond customer or merchant to (i) become a merchant of any other person or entity engaged in any business activity that competes with any business conducted by Beyond, or (ii) cease doing business with Beyond for the agreed time periods set forth in the Employment Agreement;

b.     directly or indirectly soliciting, enticing, inducing or communicating with any employee or independent contractor of Beyond to work for a third party other than Beyond or engage in any activity that would cause any employee or independent contractor of Beyond to violate any agreement with Beyond for the time period set forth in the Employment Agreement; and

c.     using Beyond's proprietary and confidential information that is in his possession, that he obtained or has access to as a result of his employment with Beyond.

3.     That the Court award Beyond monetary damages in an amount to be determined at trial;

4.     That the Court award Beyond its reasonable attorneys' fees, costs and expenses of this litigation as provided in the Employment Agreement and as otherwise provided by law;

5.     That all costs and interest be assessed against Trumbo;

6.     That the Court award such other and further relief as shall appear just and proper.

SANTOMASSIMO DAVIS LLP

By:      /s/ Anthony J. Davis
        Anthony J. Davis
        Alashia L. Chan
        Attorneys for Plaintiff Above And
        Beyond - Business Tools and Services
        for Entrepreneurs, Inc.

Dated: February 19, 2021

# EXHIBIT A

# ABOVE AND BEYOND - BUSINESS TOOLS AND SERVICES FOR Entrepreneurs
# EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT (this "Agreement") is entered into on January 31, 2018 (the "Effective Date") between Above And Beyond - Business Tools And Services For Entrepreneurs ("Company") and David Trumblo ("Employee").

a. **Employment.**  Company hereby employs Employee and Employee hereby accepts such employment upon the terms and conditions set forth in this Agreement.  Employee's start date shall be January 24, 2018, unless otherwise determined by Company.

b. **Duties Of Employee.**  Employee agrees to perform and discharge such duties consistent with such position or such other positions as Employee may hold from time to time and as may be assigned to Employee from time to time by Company, to the reasonable satisfaction of the Company.  Nothing in this agreement shall limit the reasonable expansion and/or change of Employee's duties over the course of Employee's employment with Company, as appropriate to the needs of Company. Employee shall comply with all of Company's policies, standards and regulations as may be in effect from time to time, and follow the instructions and directives as promulgated by Company. Employee shall devote Employee's full professional and business-related time, skills and best efforts to Employee's duties and will not be in any other business or professional activity, whether or not such activity is pursued for gain, profit or other pecuniary advantage, without the prior written consent of Company.

c. **Term.**  The term of Employee's employment under this Agreement (the "Term") shall be at-will, and may be terminated by either party at any time, with or without cause, subject to the terms of Section 5.

d. **Compensation And Benefits.**

    i. **a. Employee Benefits.**  Employee will be eligible for such health, dental, and other insurance coverage, 401(k) or other retirement plans other health and welfare benefits and plans which Company may now or hereafter provide to similarly situated employees, on the same terms and conditions as such coverage, benefits, and plans are provided to such other employees, subject to the right of Company to amend or terminate such coverage, benefits, and plans from time to time, and subject to the specific eligibility and participation requirements of each such plan. Employee should refer to Sales Policy to identify the Employee Benefits available to Sales Employee.

    ii. **b.Sales Compensation.**  While working as a member of the Company's sales team, Employee will  be eligible to earn certain sales compensation including bonuses and/or commissions subject to the terms and conditions of the Company's Sales Compensation Policy as may be in effect from time to time.  The final calculation of commissions earned for any account cannot be determined or earned until the account is Trued Up (as defined in Sales Policy). However, a signing bonus advance will be paid to Employee based on the estimated commissions. Employee acknowledges that this Agreement authorizes Company to make deductions from pay to account for sums advanced to Employee before actual sales commissions is determined or earned in accordance with Sales Policy.  Sales Compenstion will be paid on standard pay dates and in accordance with the Company's standard pay practices and less all statutory and required witholdings.  Employee acknowledges that prior to signing this Agreement, Employee has received and reviewed the Sales Compensation Policy in effect as of the date of this Agreement.  The Sales Compensation Policy may be modified from time to time at Company's sole discretion upon notice to Employee.  In the event of any conflict between this Agreement and the Sales Compensation Policy, the Sales Compensation Policy shall control.

e. Termination of Employment**.**  Employee or Company may terminate Employee's employment under this Agreement at any time, for any reason, subject to the following provisions. Company shall have no obligation to pay Employee (or Employee's estate) any compensation not already accrued at the time of termination.  Subject to the terms and conditions of the Sales Compensation Policy, Employee shall not earn, be entitled to, or paid any further compensation, commissions, bonus, or other benefits or remuneration following Employee's termination of employment unless otherwise entitled to such payments under the Company's vesting policy.  In the event of breach of this Agreement, Employee shall no longer be entitled to any further compensation from Beyond, including vested residuals.

    i. **a.Termination By Company For Cause.** Company may terminate Employee's employment at any time for the following causes and reasons and as otherwise permitted under  applicable law: (i) Any violation by Employee of this Agreement or any other agreement between Employee and Company; (ii) Unsatisfactory performance of Employee's duties, or negligent conduct causing injury to any person and/or to the property of Company; (iii) Theft, fraud, embezzlement, or unauthorized use of the property of Company; (iv) Outside employment or consulting which, in the discretion of Company, interferes, or potentially interferes, with the performance of Employee's duties, or which is competitive with Company, unless approved in writing by the Company pursuant to the terms and procedures set for the in the Sales Compensation Policy; (v) Violation of the drug and alcohol policy, felony conviction, or any other conduct which may, in the discretion of Company, cause damage to Company's reputation and standing in the

community; or (vi) Conduct that violates Company's rules, Sales Compensation Policy, policies or regulations, or otherwise unacceptable or disruptive behavior, as determined in Company's sole discretion.  A termination by Company under this Section 5(a) is referred to hereinafter as a termination for "Cause."  Employee acknowledges and agrees that a termination for Cause may result in the termination or forfeiture of certain sales compensation and rights to his or her vested sales portfolio, subject to the terms and conditions of the Sales Compensation Policy.

    ii. **b.Death Or Permanent Disability.**  Employee's employment under this Agreement shall terminate on the date of Employee's death or disability.  For the purposes of this section, "disability" shall mean Employee's permanent inability to perform the essential functions of Employee's position with or without a reasonable accommodation, subject to applicable law.  If Employee is vested at the time of death or permanent disability, Company will perform a buyout of the portfolio in accordance with the buyout procedures set forth in Sales Policy.  If employee was not vested at the time of death or permanent disability , Company will in its sole discretion either (i) continue to pay Employee or Employee's executor or legal representative the Residual Commissions that would otherwise be payable to Employee for a period of 12 months following death or permanent disability or (ii) pay Employee or Employee's executor or legal representative a lump sum payment requal to the 12 times the Residual Commission payable to Employee for active Merchants in the month propr to the death or permanent disability.

f. **Return Of Property.**  Immediately upon Employee's termination of employment for any reason or cause, Employee will return to Company all Company property in Employee's possession or control, including all Confidential Information (defined below) in Employee's possession.

g. Proprietary, Confidential and Trade Secret Information.

h. **Business Protection Covenants.**  Employee acknowledges and agrees that as a key employee of the Company, Employee is responsible for and directly involved in developing goodwill and business relationships for the benefit of Company; Employee is responsible for the operation of Company's business and the development of customers; Employee will be entrusted with, and has knowledge of, Company's most proprietary and valuable Confidential Information; and that Employee will gain unique insight into and knowledge of the skills, talents and capabilities of Company's employees and independent contractors.  This Agreement is not intended to preclude Employee's opportunity to engage in or otherwise pursue occupations in any unrelated or non-competitive field of endeavor, or to engage in or otherwise pursue directly competitive endeavors so long as they meet the requirements of this Agreement.  Employee represents that Employee's experience and abilities are such that the existence or enforcement of these covenants and promises will not prevent Employee from earning or pursuing an adequate livelihood and will not cause an undue burden or economic hardship to Employee or Employee's family.  Employee acknowledges that these covenants and promises (and their respective time, geographic, and/or activity limitations) are reasonable and that the limitations are no greater than necessary to protect the Company's legitimate business interests in light of Employee's position with Company and Company's business.

    i. **a.Non-Solicitation of Customers.**

        i. **i.**  During the period of his/her employment with Company and for a period of twelve (12) months after the termination of employment for any reason (including but not limited to termination with or without Cause), Employee hereby covenants that he/she will not, directly or indirectly, solicit, entice or induce any Customer (as defined below) to (A) become a merchant of any other person or entity engaged in any business activity that competes with any business conducted by Company at any time during the period of Employee's employment with Company, or (B) cease doing business with Company.  Employee hereby covenants that he/she will not will not assist any person or entity in taking any action described in the foregoing subsections (A) and (B) of the preceding sentence. "Customer" shall mean any customer, client, merchant, or other party having a contractual or business relationship with Company, including referral relationships, to which Company is providing services. Employee hereby covenants that he/she will not assist any person or entity in taking any action prohibited by this Section 8(a)(i).  The parties understand and agree that the business protection covenants of this Section 8(a)(i) shall not apply at any time period that Employee is a California resident and/or assigned to a principal work location in California.

        ii. **ii.**  For those Employees who are vested, during the period of his/her employment with Company and for a period of thirty (30) months after the termination of employment for any reason (including but not limited to termination with or without Cause), Employee hereby covenants that he/she will not, directly or indirectly, solicit, entice or induce any Customer for which Employee has been paid compensation under the Sales Compensation Policy, to (A) become a merchant of any other person or entity engaged in any business activity that competes with any business conducted by Company at any time during the period of Employee's employment with Company, or (B) cease doing business with Company.  Employee hereby covenants that he/she will not will not assist any person or entity in taking any action described in the foregoing subsections (A) and (B) of the preceding sentence. The parties understand and agree that the business protection covenants of this Section 8(a)(ii) shall not apply at any time period that Employee is a California resident and/or assigned to a principal work location in California.

        iii. **iii.**California Employees. For those employees who are California residents or assigned to a principal work location in California, Employee hereby agrees the after the termination of employment for any reason he/she will not use

Beyond's trade secrets for any purpose and for a period of twelve (12) months following termination he/she will not use Beyond's Confidential Information to, directly or indirectly, solicit, entice or induce any Customer to (A) become a merchant of any other person or entity engaged in any business activity that competes with any business conducted by Company at any time during the period of Employee's employment with Company, or (B) cease doing business with Company.  Employee hereby covenants that he/she will not will not assist any person or entity in taking any action described in the foregoing subsections (A) and (B) of the preceding sentence.

ii.  **b.  Non-Solicitation of Employees.**  During the period of Employee's employment with Company and for a period of twenty-four (24) months after the termination of Employee's employment for any reason (including but not limited to termination with or without Cause), Employee will not directly or indirectly solicit any employee or independent contractor of Company to work for a third party other than Company or engage in any activity that would cause any employee or independent contractor to violate any agreement with Company.

i.  **Remedies and Injunctive Relief.**  Employee acknowledges that it would be difficult to calculate Company's damages from Employee's breach of Sections 7 and 8, and that money damages would therefore be an inadequate remedy.  Accordingly, upon such breach, Employee acknowledges that Company may seek and shall be entitled to temporary, preliminary, and/or permanent injunctive relief against Employee, and/or other appropriate orders to restrain such breach.  Nothing in this provision shall limit or prevent Company from seeking any other damages or relief provided by applicable law for breach of this Agreement or any section or provision hereof.  The parties agree that Company may obtain specific performance, and that Company shall not be required to post bond in the event it is necessary for Company to obtain temporary or preliminary injunctive relief, any bond requirement hereby being expressly waived by Employee.

j.  **Indemnification.**  Unless otherwise prohibited by law,  Employee agrees to indemnify and hold harmless Company, its officer, directors employees and agents from and against any and all losses, claims, liabilities damages, costs, fines, fees and expenses including reasonable attorney's fees incurred by Company as the result of Employee's (a) intentional misrepresenations or fraud; (b) material breach of this Agreement; and (c) use of a motor vehicle used in the course of employment.

k.   **Representation**.  Employee represents and warrants that he/she is fully authorized to enter into this Agreement and that by entering into this Agreement, he/she is not violating any other agreement to which he/she is a party or otherwise obligated under.

l.  **Notices.**  Any notice to Employee required or permitted under this Agreement shall be made in writing and delivered by personal delivery, electronic mail, electronic communication application or intranet regularly used by Company for business notifications and messages, certified mail or by any nationally recognized air courier, charges prepaid, addressed using the contact information Company has on file for Employee.  Any notice to Company shall be made in writing and delivered by personal delivery, certified mail or by any nationally recognized air courier, charges prepaid, addressed to the Company (to the attention of "Legal Department") at the regular mailing address for Company's principal office at the time notice is given.

m.  **Severability; Waiver.**  If any provision of this Agreement shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable.  If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.  The waiver by either party of compliance with any provision of this Agreement by the other party shall not operate or be construed as a waiver of any other provision of this Agreement, or of any subsequent breach by such party of a provision of this Agreement.

n.  **Assignment; Binding Effect.**  Employee may not assign or transfer Employee's rights or delegate Employee's duties, responsibilities, or obligations under this Agreement to any person, firm, or corporation without the prior written consent of Company.  This Agreement and all of Company's rights and obligations hereunder may be assigned, delegated or transferred by Company to any affiliate or subsidiary of Company or to any business entity which at any time by merger, consolidation or otherwise acquires all or substantially all of the assets of Company or to which Company transfers all or substantially all of its assets.  This Agreement shall inure to the benefit of and shall be binding upon the parties hereto, and any successors to or assigns of Company.

o.  **Entire Agreement, Modifications and Amendments**.  This constitutes the entire agreement between the parties with respect to the subject matter set forth herein and supersedes any previous agreements whether written or oral. No modification of or amendment to this Agreement shall be effective unless made in writing and signed by the Company. The headings contained in this Agreement are for reference purposes  only and do not in any way affect the meaning or interpretation of the Agreement.

p.  **Governing Law; Exclusive Venue.**  This Agreement shall be governed and construed in accordance with the laws of the State of New Jersey, and no conflict-of-laws provisions shall be invoked to permit the application of the laws of any other state or jurisdiction.  The parties hereto hereby agree that the exclusive and convenient forum and venue for any disputes between any of the parties hereto arising out of this Agreement shall be any proper state or federal court for Mercer County, New Jersey, and each of the parties hereto hereby submits to the personal jurisdiction of any such court. Employee hereby agrees and consents to the personal and exclusive jurisdiction of said courts over him/her as to all suits, actions and

proceedings arising out of or related to this Agreement.  The foregoing shall not limit the rights of any party to obtain execution of judgment in any other jurisdiction.

q. **Waiver of Jury Trial**.  Unless otherwise prohibited by law, the parties irrevocably waive their rights to a trial by jury in any suit, proceeding or action relating to, arising from, or connected to this Agreement.  This waiver includes any statutory damages arising from the employment relationship, including claims for discrimination, retaliation or wrongful discharge.

r. **Attorney's Fees**.  In any suit brought by one party against the other arising from, relating to or in connection with this Agreement, the prevailing party will be entitled to reasonable attorney's fees, costs of suit and fees.

Company's Confidential Information is the sole and exclusive property of the Company.  Company invests considerable time and resources into developing and maintaining its Confidential Information. Except in the course of performing Employee's obligations under this Agreement or pursuant to written authorization from Company, or as required by law, Employee shall hold in confidence and shall not:  (a) directly or indirectly reveal, report, publish, disclose or transfer Confidential Information to any person or entity; or (b) use any Confidential Information for any purpose other than for the benefit of Company; or (c) assist any person or entity other than Company to secure any benefit from Confidential Information.  For purposes of this Agreement, the term "Confidential Information" means any confidential,  proprietary and/or trade secret information of Company in any form that is not generally known by the public or in the industry, including, but not limited to, the following: information which Company designates as confidential, in writing; inventions and intellectual property; research and development information, reports, plans and data; components, methods, and strategies; technical information about Company's products and planned products; source code for applications and computer software; standard operating procedures; marketing, sales, product, and business plans and strategies; pricing and pricing models; compensation plans and strategies; personnel and sales training information and materials; information about Company's relationships and agreements with merchants, customers, suppliers, and vendors; any information not generally known by persons other than Company personnel or persons subject to confidentiality; confidential and proprietary information of Company's affiliates, subsidiaries, and related companies; information provided to Company by third parties subject to an obligation or agreement to keep such information confidential; individual or consumer credit or financial account information, private financial or other legally protected information of individuals or businesses; tax and social security numbers; any information which Employee knows or should know that Company would not care to have revealed to competitors or others; and any confidential information which Employee makes, conceives or develops as a result of Employee's relationship with Company.  Employee acknowledges that Company may, from time to time, have agreements with other persons or entities that impose obligations or restrictions on Company regarding work to be created by Employee during the course of Employee's employment with Company, or regarding the confidential nature of the work or the confidential or proprietary information of any third party disclosed during or used as part of such work.  Employee agrees to be bound by all such obligations and restrictions and to take all actions necessary to discharge Company's obligations thereunder.  Employee's obligations under this Section shall survive the termination of Employee's employment for any reason.  Employee's obligations shall survive the termination of Employee's employment and for three years thereafter; for Confidential Information that is a trade secret under applicable law, Employee's obligations under this Section shall survive the termination of Employee's employment for so long as the Confidential Information rises to the level of a trade secret under applicable law, or for the maximum duration provided under such law.

**For those Employees residing in California only, the Agreement shall be governed and construed in accordance with laws of the State of California and no conflict of law provisions shall be invoked to permit the application of the laws of any other state or jurisdiction.  The exclusive jurisdiction for any dispute arising in California from this Agreement shall be the state or federal courts for California.**

EMPLOYEE ACKNOWLEDGES THAT HE/SHE HAS CAREFULLY READ AND UNDERSTANDS THE AGREEMENT AND FREELY AND VOLUNTARILY CONSENTS TO ALL OF THE TERMS AND CONDITIONS HEREIN AND THAT HE/SHE SIGNS THE SAME AS HIS/HER OWN FREE ACT.  EMPLOYEE FURTHER ACKNOWLEDGES THAT HE/SHE HAS BEEN GIVEN THE OPPORTUNITY TO CONSULT WITH COUNSEL OF HIS OR HER OWN CHOOSING AND THAT FAILURE TO CONSULT WITH COUNSEL MAY HAVE ADVERSE CONSEQUENCES TO EMPLOYEE.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.

**ABOVE AND BEYOND - BUSINESS TOOL AND SERVICES FOR ENTREPRENEURS, INC.**

**EMPLOYEE:**

*Conan A. Lane*

*David Trumbo*

By: _____

By: _____

Conan Lane

David Trumblo

Chief of Staff                                    Team Lead

Document Ref: HDOX7-P6VVF-MXNG4-WULUQ

# Signature Certificate

Document Ref.: HDOX7-P6VVF-MXNG4-WULUQ

Document signed by:



### David Trumbo

Verified E-mail:
david.trumbo@getbeyond.com

*David Trumbo*

IP: 65.30.39.133          Date: 01 Feb 2018 14:45:29 UTC



### Conan Lane

Verified E-mail:
conan.lane@getbeyond.com

*Conan A. Lane*

IP: 96.67.138.209          Date: 01 Feb 2018 15:21:22 UTC

Document completed by all parties on:
01 Feb 2018 15:21:22 UTC

Page 1 of 1



Signed with PandaDoc.com

PandaDoc is the document platform that boosts your
company's revenue by accelerating the way it transacts.



# EXHIBIT B

rn=urn%3Ali%3Afs_miniProfile%3AACoAACYWzPoBNi79WgjvfIRBYW9fhM4XFuLLoy8



**David Trumbo** · 2nd

Business and Payments Educator at PayCompass

Greater Milwaukee Area · 500+ connections · Contact info

PayCompas

University

Milwaukee