**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ABOVE AND BEYOND - BUSINESS TOOLS AND SERVICES FOR ENTREPRENEURS, INC., <br><br> Plaintiff, <br><br> v. <br><br> DAVID TRUMBO, <br><br> Defendant. | Civil Action No. 21-3042 (MAS) (TJB) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Plaintiff Above and Beyond - Business Tools and Services for Entrepreneurs, Inc.'s ("Above and Beyond") unopposed Motion for Default Judgment against Defendant David Trumbo ("Trumbo"). (ECF No. 9.) The Court has carefully reviewed Above and Beyond's submission and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court grants in-part and denies in-part Above and Beyond's Motion.

**I.   BACKGROUND**

In this lawsuit, an employer sues a former employee for violating various post-employment restrictions, including promises not to poach the employer's customers, merchants, and employees. That employer, Above and Beyond, hired Trumbo in January 2018 in its marketing department to sell and promote its services. (Compl. ¶ 29, ECF No. 1.) As part of his employment, Trumbo had access to Above and Beyond's confidential information, including (among others) "[e]xtensive sales information regarding [Above and] Beyond's merchants," "confidential pricing, marketing,

and sales strategies," "business, marketing, and advertising plans," and "current products, services, and other offerings." (*Id.* ¶¶ 50-51.)

By contract, Trumbo could not disclose that confidential information to competitors or use it to poach Above and Beyond's customers, merchants, and employees. (*Id.* ¶¶ 30-37.) For example, the employment agreement Trumbo signed forbade him from soliciting Above and Beyond customers for one year after his employment with the company. (*Id.* ¶ 33.) It further prohibited him from soliciting employees and merchants for two years and two-and-a-half years, respectively, after his employment. (*Id.* ¶¶ 34-36.) He also could not "us[e] any of [Above and] Beyond's 'Confidential Information' for any purpose other than for the benefit of [Above and] Beyond" for three years. (*Id.* ¶¶ 37, 70.)

Trumbo failed to comply with these covenants. In July 2020, he quit Above and Beyond and began working at a competitor, PayCompass, shortly thereafter. (*Id.* ¶¶ 53, 56.) Although his prior employment agreement did not bar him from working for a competitor, Trumbo actively solicited Above and Beyond customers, employees, and merchants to sign on with PayCompass. (*Id.* ¶¶ 58-60.) For example, the Complaint alleges that Trumbo enticed Pretty Nails & Spa, an Above and Beyond merchant, to sign on with PayCompass to Above and Beyond's detriment. (*Id.* ¶ 60.) The Complaint also alleges that Trumbo "engag[ed] in deceptive practices" by transferring Above and Beyond merchants to PayCompass "without the knowledge or authorization" of that merchant. (*Id.* ¶ 61.)

No doubt fed up with Trumbo's conduct, Above and Beyond sued, seeking monetary and injunctive relief for various common-law torts. (*See generally id.*) Above and Beyond served Trumbo by hand delivery on April 14, 2021. (Aff. of Service, ECF No. 5.) More than a month later, Above and Beyond requested default, and the Clerk entered default on May 26, 2021. Above

2

and Beyond followed up with a motion for partial default judgment, where it argued that the Court should grant its request for a permanent injunction barring Trumbo from violating his employment agreement covenants. (*See generally* Pl.'s Br. *6-8, ECF No. 9-1.)[1] Above and Beyond has not yet moved for default judgment regarding its monetary damages. (*See id.* at *2 ("[Above and] Beyond is only seeking entry of partial default judgment at this time because Beyond is conducting third-party discovery to obtain evidence to support Beyond's claim for monetary damages against Trumbo.").) Trumbo has not responded to any filing in this action.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 55[2] authorizes the Court to enter default judgment against "a properly served defendant who fails to file a timely responsive pleading." *La. Counseling & Fam. Servs., Inc. v. Makrygialos, LLC*, 543 F. Supp. 2d 359, 364 (D.N.J. 2008) (citing *Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990)). Entry of default judgment is left to the district court's discretion. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). That said, because entry of default judgment resolves a plaintiff's claims on the merits, it is a disfavored remedy. *See Local 365 Pension Fund v. Kaplan Bros. Blue Flame Corp.*, No. 20-10536, 2021 WL 1976700, at *2 (D.N.J. May 18, 2021) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984)).

Three analyses guide the Court's discretion. *First*, where a defendant fails to respond to a complaint, the Court must ensure that the plaintiff properly served the defendant. *See Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985). *Second*, the Court must ensure that "the

---

[1] Pin-cites preceded by asterisks refer to the pagination atop the CM/ECF header.

[2] All references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

unchallenged facts" in the complaint give rise to a "legitimate cause of action." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008) (quoting *DIRECTV, Inc. v. Asher*, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006)). In conducting that assessment, the Court assumes as true all allegations in the Complaint, except legal conclusions and allegations regarding damages. *See DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 & n.6 (3d Cir. 2005) (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). *Third*, the Court must determine whether default judgment is appropriate by weighing three factors: "(1) whether the defaulting party has a meritorious defense; (2) the prejudice suffered by the plaintiff seeking default; and (3) the defaulting party's culpability in bringing about default." *Trs. of UFCW Local 152 Health & Welfare Fund v. Avon Food, Inc.*, No. 17-2178, 2018 WL 372167, at *3 (D.N.J. Jan. 11, 2018) (citing *Emcaso Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).

The Court's inquiry does not end there. "Default does not establish liability for the amount of damages claimed by the plaintiff." *Trucking Emps. of N. Jersey Welfare Fund, Inc.-Pension Fund v. Caliber Auto Transfer, Inc.*, No. 08-02782, 2009 WL 3584358, at *3 (D.N.J. Oct. 27, 2009) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.")). Thus, the Court must conduct "an inquiry in order to ascertain the amount of damages with reasonable certainty." *Id.* (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).

## III.   DISCUSSION

The Court first considers whether default judgment is appropriate as to liability and whether a permanent injunction is the proper remedy. Ultimately, the Court concludes that Above and Beyond has established liability against Trumbo and grants a three-year injunction on Trumbo's use of Above and Beyond's confidential information.

A.   **Above and Beyond's Service Was Proper.**

The Court begins by analyzing whether Above and Beyond properly served Trumbo.[3] Rule 4 governs service and provides that an individual must be served by a nonparty "delivering a copy of the summons and of the complaint to the individual personally." Fed. R. Civ. P. 4(e)(2)(A). To that end, Above and Beyond filed an affidavit of service showing that a process server successfully delivered copies of the summons, complaint, and associated exhibits to Trumbo personally. (Aff. of Service.) Nothing in the record suggests that service was improper. The Court therefore concludes that Above and Beyond properly served Trumbo.

B.   **The Court Has Personal Jurisdiction Over Trumbo.**

Even with proper service, the Court must assure itself that it may exercise jurisdiction over the parties. *See Mark IV Transp. & Logistics v. Lightning Logistics, Inc.*, 705 F. App'x 103, 108 (3d Cir. 2017) ("[W]hen a court is considering whether to enter a default judgment, it may dismiss an action *sua sponte* for lack of personal jurisdiction." (quoting *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999))). On a motion for default judgment, the Court takes as true all well-pleaded jurisdictional allegations in the Complaint to assess whether Above and Beyond has made a prima facie showing of personal jurisdiction. *See Allaham v. Naddaf*, 635 F. App'x 32, 36-37 (3d Cir. 2015) (citations omitted). Above and Beyond's Complaint alleges that Trumbo "consented to and submitted to the personal jurisdiction and venue of this Court when he signed his Employment Agreement with [Above and] Beyond." (Compl. ¶ 18; *id.* ¶ 19 ("Section p of the Employment Agreement with [Above and] Beyond provides that the exclusive and convenient forum and venue for any disputes between the parties arising out of such agreements shall be any proper state or

---

[3] The Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the Complaint alleges that Above and Beyond is a New Jersey corporation, that Trumbo is a Wisconsin or Iowa citizen, and that the monetary and injunctive relief exceed $75,000. (Compl. ¶¶ 5-6, 16-17.)

5

federal court for Mercer County, New Jersey, and the parties expressly submitted to the personal jurisdiction of this Court by entering into the Employment Agreement.").

These allegations satisfy the Court that it has personal jurisdiction over Trumbo. Trumbo had minimum contacts with New Jersey by working for a New Jersey corporation and signing an employment agreement consenting to the jurisdiction of New Jersey courts. *See Actega Kelstar, Inc. v. Musselwhite*, No. 09-1255, 2009 WL 1794793, at *2 (D.N.J. June 22, 2009) ("[The p]laintiff has demonstrated that this Court has personal jurisdiction over [the d]efendant because he consented to the jurisdiction of this Court in his employment agreement."). In addition, the New Jersey forum selection clause does not offend due process such that exercise of this Court's jurisdiction would be improper. Indeed, a forum selection clause is presumptively valid when it has been "obtained through 'freely negotiated' agreements that are not 'unreasonable or unjust.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). That presumption is especially heavy here where no party has challenged the enforceability of the forum selection clause. *See In re: Howmedica Osteonics Corp.*, 867 F.3d 390, 398 n.3 (3d Cir. 2017) (approving district court's exercise of personal jurisdiction because personal jurisdiction is a "waivable right," because employees consented to jurisdiction in employment agreements, and because employee "never raised a personal jurisdiction objection" (citations omitted)); *Int'l Bus. Software Sols., Inc. v. Sail Labs Tech.*, 440 F. Supp. 2d 357, 362 (D.N.J. 2006) (noting that parties resisting forum selection clauses must show "either that the forum thus selected is so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court, or that the clause was procured through fraud or overreaching" (quoting *Foster v. Chesapeake, Ins. Co.*, 933 F.2d 1207, 1219 (3d Cir. 1991))). The Court accordingly exercises personal jurisdiction over Trumbo.

### C. Above and Beyond Has Pled a Legitimate Cause of Action.

Having determined that service was proper, the Court next evaluates "whether the moving party's complaint establishes a legitimate cause of action." *La. Counseling & Fam. Servs., Inc.*, 543 F. Supp. 2d at 365. Above and Beyond's Complaint alleges that Trumbo violated the post-employment covenants in his employment agreement by soliciting Above and Beyond customers, merchants, and employees. (Compl. ¶¶ 30-37.) It further alleges that Trumbo used Above and Beyond's confidential information for the benefit of PayCompass—in direct violation of his employment agreement with Above and Beyond. (*Id.* ¶ 62.) On these facts, the Court is satisfied that Above and Beyond has pled a legitimate cause of action. *See Manncorp, Inc. v. Led One Distrib., Inc.*, No. 15-2486, 2015 WL 8007935, at *2 (E.D. Pa. Dec. 7, 2015) (finding legitimate cause of action where employee "concealed her simultaneous employment with a competitor, stole proprietary and confidential information, and constructed [competitor's] website based on [employer's] confidential and proprietary information"). Indeed, the Complaint alleges that Trumbo helped poach a specific merchant, which is likely more than enough to show a putative breach of contract, especially without any opposition from Trumbo. (*See* Compl. ¶ 60; *Leonard Crawford Elec., LLC v. Hart Maint. & Constr., LLC*, No. 21-451, 2021 WL 3674641, at *2 (M.D. Pa. Aug. 19, 2021) (reciting breach-of-contract factors and holding that allegations of those factors "satisf[y] [p]laintiff's burden to show an entitlement to default judgment" considering "the absence of any opposition from [d]efendant").)

### D. Entry of Default Judgment Is Appropriate.

Next, the Court considers whether entry of a default judgment is appropriate by weighing "(1) whether the defaulting party has a meritorious defense; (2) the prejudice suffered by the plaintiff seeking default; and (3) the defaulting party's culpability in bringing about default." *Trs. of UFCW Local 152 Health & Welfare Fund*, 2018 WL 372167, at *3. The Court finds that all

three factors weigh in favor of entering default judgment. *First*, the Court has no litigable defenses to consider because Trumbo has failed to appear or respond to the Complaint. *See Prudential Ins. Co. of Am. v. Taylor*, No. 08-2108, 2009 WL 536403, at *1 (D.N.J. Feb. 27, 2009) ("[B]ecause [defendant] has not answered or otherwise appeared in this action, the Court was unable to ascertain whether she has any litigable defenses."). Even if Trumbo had, the Court's own review of the restrictive covenants at issue reveals their reasonability. *See HR Staffing Consultants, LLC v. Butts*, 627 F. App'x 168, 172-73 (3d Cir. 2015) ("[T]he non-compete protects two legitimate business interests of [the employer]: preventing disintermediation (the ability of customers or employees to cut out [the employer] as a middleman), and protecting confidential information."). *Second*, Above and Beyond will be prejudiced because Trumbo has never responded to any filing in this action and because it has "no other means to vindicate [its] claims." *Tryg Ins. v. C.H. Robinson Worldwide, Inc.*, No. 15-5343, 2017 WL 11491955, at *3 (D.N.J. Nov. 28, 2017) (alteration in original) (quoting *United States v. DiPiazza*, No. 16-518, 2016 WL 7015625, at *2 (D.N.J. Nov. 30, 2016)). *Finally*, Trumbo's "complete inaction . . . reflects willful conduct." *Tryg Ins.*, 2017 WL 11491955, at *3 (quoting *DiPiazza*, 2016 WL 7015625, at *5).

### E. The Court Enjoins Trumbo from Using Confidential Information Through July 2023.

Having concluded that entry of default judgment is proper, the Court next considers whether to enter a permanent injunction against Trumbo. To qualify for a permanent injunction, Above and Beyond must show four factors:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law are inadequate to compensate for that injury; (3) that considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*DISH Network, LLC v. Sidhu*, No. 14-3781, 2015 WL 733733, at *2 (D.N.J. Feb. 20, 2015) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 388 (2006)). "An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Free Speech Coal., Inc. v. Att'y Gen. of the U.S.*, 974 F.3d 408, 430 (3d Cir. 2020) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010)). To that end, the Court must be careful not to "[p]resum[e] irreparable harm" because injunctive relief "may only be awarded upon a *clear showing* that the plaintiff is entitled to such relief." *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 217 (3d Cir. 2014) (second quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). In applying that standard, the Court is especially cautious in awarding a permanent injunction in the default judgment context. Without the benefit of any opposition, the Court must ensure itself that Above and Beyond has properly demonstrated the necessity of a permanent injunction. Otherwise, default judgment could serve as an end run around the "high burden placed on the moving party to establish that an injunction is warranted." *Mallet & Co. v. Lacayo*, 16 F.4th 364, 391 (3d Cir. 2021) (citing *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988)).

With the standard set, the Court considers Above and Beyond's requested relief. Above and Beyond seeks a permanent injunction to enforce four separate restrictive covenants: (1) a one-year ban on soliciting customers, (2) a two-year ban on soliciting employees, (3) a two-and-a-half year ban on soliciting merchants, and (4) a three-year ban on the use of confidential information. The Court considers each in turn.

To start, the Court will not enter a permanent injunction to enjoin Trumbo from continuing to solicit Above and Beyond customers for the simple reason that the relevant covenant has expired. Trumbo quit in July 2020, meaning the customer non-solicitation covenant ended in July

9

2021. Thus, any prospective permanent injunction would be moot. *See ROI Controls Corp. v. Weber*, No. 88-2428, 1988 WL 125851, at *2 (D.N.J. Nov. 23, 1988) ("[B]ecause the 'purpose of an injunction is to prevent *future violations* [of rights],' proceedings for prospective relief conducted on the basis of an expired negative covenant would prohibit conduct which is no longer actionable while failing to redress actionable conduct which has already occurred." (alteration in original) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). Above and Beyond can instead seek monetary damages for any loss of customers incurred between July 2020 and July 2021 due to Trumbo's conduct.

Turning to the employee and merchant non-solicitation clauses, these restrictions have not yet expired. The employee non-solicitation clause expires in July 2022; the merchant non-solicitation clause in January 2023. But although these restrictions apply prospectively, the Court concludes that a permanent injunction is not the right remedy to enforce future breaches of these covenants. Principally, Above and Beyond has not met its "high burden" to show that monetary damages would be inadequate to remedy these losses caused by Trumbo. *Mallet & Co.*, 16 F.4th at 391. Citing fifty-eight paragraphs of its Complaint, Above and Beyond conclusorily asserts that Trumbo's solicitation of its "merchants are inadequate to compensate [it] for its injuries." (Pl.'s Br. *7.) It does not argue or explain why losses of employees or losses of merchants are not easily quantifiable.

Indeed, Above and Beyond's allegations and actions undermine its position that these losses are not adequately compensable. Above and Beyond identifies, for example, a specific merchant in its Complaint (Pretty Nails & Spa) that Trumbo has poached—allowing the Court to reasonably infer that the company is able to identify accounts thieved by Trumbo and quantify monthly losses. (*See* Compl. ¶ 60.) Further and tellingly, Above and Beyond is currently seeking

discovery from PayCompass to bring another motion for default judgment on monetary damages regarding the loss of customers, employees, and merchants. (*See* Pl.'s Br. *2 ("[Above and] Beyond is conducting third-party discovery to obtain evidence to support [Above and] Beyond's claim for monetary damages against Trumbo.").) The Court accordingly concludes that a permanent injunction is unnecessary to enforce these covenants;[4] Above and Beyond can move for monetary damages or, alternatively, explain why those damages are inadequate. *See Frank's GMC Truck Ctr.*, 847 F.2d at 102 ("The availability of adequate monetary damages belies a claim of irreparable injury.").[5]

Turning finally to the confidential-information covenant, Above and Beyond seeks a three-year injunction to ban Trumbo from using any confidential information he obtained from the company. (Compl. ¶ 70.) Here, the Court agrees that a three-year injunction is warranted. The Court finds persuasive the authorities iterating that misuse of confidential information and trade secrets is irreparable harm that warrants injunctive relief. *See, e.g., ADP, LLC v. Olson*, No. 20-3312, 2020 WL 6305554, at *12 (D.N.J. Oct. 28, 2020) ("Improper use of trade secrets constitutes irreparable harm." (citing *U.S. Food Serv., Inc. v. Raad*, 2006 WL 1029653, at *7 (N.J. Super. Ct. Ch. Div. Apr. 12, 2006))); *Fisher Bioservices, Inc. v. Bilcare, Inc.*, 2006 WL 1517382, at *20 (E.D. Pa. May 31, 2006) ("[I]njury to goodwill and the use of a company's confidential

---

[4] In addition, the Court further notes that an injunction to enforce the employee non-solicitation clause would have little impact as it would expire in July 2022—just two months after this decision.

[5] The Court understands that Trumbo stipulated to the inadequacy of damages in his employment agreement. (*See* Compl. Ex. A (Employment Agreement) 3, ECF No. 1.) Courts, however, are not bound by these stipulations, and the Court does not credit it here. *See Dice v. Clinicorp, Inc.*, 887 F. Supp. 803, 810 (W.D. Pa. 1995) ("[I]t is clear that the parties to a contract cannot, by including certain language in that contract, create a right to injunctive relief where it would otherwise be inappropriate." (alteration in original) (quoting *Fireman's Ins. Co. of Newark v. Keating*, 753 F. Supp. 1146, 1154 (S.D.N.Y. 1990))).

11

information are the types of injuries which would constitute irreparable harm that cannot be compensated with monetary damages." (citations omitted)); Donald J. Aspelund & Joan E. Beckner, Employee Noncompetition Law § 8:8 (Aug. 2021) ("Injunctions are particularly appropriate if monetary damages would not adequately compensate the plaintiff for the unfaithful employee's unilateral breach of client confidentiality through the improper taking and use of client files." (listing cases)). At the same time, the Court also finds persuasive the authorities that determine that "[a] non-compete covenant may not extend beyond the temporal point when the secret information has become obsolete" nor may it "extend beyond the period in which the former employee could independently replicate the protected information." *Truong, LLC v. Tran*, No. A-5752-11T1, 2013 WL 85368, at *9 (N.J. Super. Ct. App. Div. Jan. 9, 2013) (first quoting *EarthWeb, Inc. v. Schlack*, 71 F. Supp. 2d 299, 313 (S.D.N.Y. 1999); then citing *Raven v. A. Klein & Co.*, 478 A.2d 1208, 1212 (N.J. Super. Ct. App. Div. 1984)).

Considering these authorities, the Court will enjoin Trumbo from using confidential information—as that term is defined in Trumbo's employment agreement with Above and

Beyond[6]—through July 2023. A three-year injunction on Above and Beyond's confidential information properly protects the company's proprietary information while also not imposing an undue burden on Trumbo. Indeed, at some point Above and Beyond's trade secrets will become obsolete, and Trumbo will learn to independently develop those secrets such that a boundless injunction will work as an unreasonable restraint on trade. *See Tatarian v. Aluf Plastics*, No. 01-5372, 2002 WL 1065880, at *13 n.14 (D.N.J. May 13, 2002) ("Because New Jersey courts disfavor permanent restraints on trade, even if [c]laimants had successfully made out a case for

---

[6] The employment agreement defines confidential information as follows:

> [T]he term "Confidential Information" means any confidential, proprietary and/or trade secret information of Company in any form that is not generally known by the public or in the industry, including, but not limited to, the following: information which Company designates as confidential, in writing; inventions and intellectual property; research and development information, reports, plans and data; components, methods, and strategies; technical information about Company's products and planned products; source code for applications and computer software; standard operating procedures; marketing, sales, product, and business plans and strategies; pricing and pricing models; compensation plans and strategies; personnel and sales training information and materials; information about Company's relationships and agreements with merchants, customers, suppliers, and vendors; any information not generally known by persons other than Company personnel or persons subject to confidentiality; confidential and proprietary information of Company's affiliates, subsidiaries, and related companies; information provided to Company by third parties subject to an obligation or agreement to keep such information confidential; individual or consumer credit or financial account information, private financial or other legally protected information of individuals or businesses; tax and social security numbers; any information which Employee knows or should know that Company would not care to have revealed to competitors or others; and any confidential information which Employee makes, conceives or develops as a result of Employee's relationship with Company.

(Employment Agreement 4.)

issuance of an injunction, that injunction necessarily would have been as narrowly tailored as this Court could have crafted it." (citation omitted)); *United Bd. & Carton Corp. v. Britting*, 164 A.2d 824, 833 (N.J. Super. Ct. Ch. Div. 1959) ("The defendants should not be kept out of competition forever, for such a policy would destroy free enterprise and the wholesome benefits which fair and honest competition creates.").[7]

## IV.   CONCLUSION

The Court holds that default judgment is appropriate as to liability; it is less appropriate as to the remedy of a permanent injunction. The Court does not enjoin Trumbo from soliciting Above and Beyond's customers, employees, or merchants. Above and Beyond may seek monetary damages for those losses. The Court does enjoin, however, Trumbo from using Above and Beyond's confidential information for three years following his employment. An order consistent with this Memorandum Opinion will follow.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[7] The Court notes as well that three years aligns with the three-year statute of limitations for the New Jersey Trade Secrets Act. *See* N.J. Stat. Ann. § 56:15-8 (West 2021) ("An action for misappropriation must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered.").