**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

ABOVE AND BEYOND - BUSINESS TOOLS AND SERVICES FOR ENTREPRENEURS, INC.,

Plaintiff,

v.

DAVID TRUMBO,

Defendant.

Civil Action No. 21-3042 (MAS) (TJB)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court on Plaintiff Above and Beyond - Business Tools and Services for Entrepreneurs, Inc.'s ("Plaintiff") unopposed Renewed Motion for Final Default Judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) against Defendant David Trumbo ("Defendant"). (ECF No. 28.) The Court has carefully considered Plaintiff's submission and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court grants Plaintiff's Motion.

## I. BACKGROUND[1]

Previously, this Court determined that default judgment was appropriate as to Defendant's liability. (May 26 Op. 14.) In making that determination, the Court found that Plaintiff had sufficiently pled a legitimate cause of action based upon Defendant's breach of the employment

[1] The factual background of this dispute is explained in this Court's Memorandum Opinion dated May 26, 2022 ("May 26 Opinion"), which the Court incorporates by reference. (May 26 Op., ECF No. 11.)

agreement between the parties dated January 31, 2018 ("Employment Agreement").[2] (*Id.* at 7.) The Complaint alleged that Defendant violated post-employment covenants in the Employment Agreement by, *inter alia*, using Plaintiff's confidential information for the direct benefit of his new employer and soliciting Plaintiff's customers, merchants, and employees. (*Id.*) Further, the Court noted that the Complaint's allegation that Defendant helped poach a specific merchant was more than enough to show a putative breach of contract, especially without any opposition from Defendant. (*Id.*)

In the May 26 Opinion, the Court also granted a three-year injunction enjoining Defendant from using any of Plaintiff's confidential information until July 2023. (*Id.* at 12-14.) The Court, however, declined to grant a permanent injunction related to Defendant's solicitation of Plaintiff's customers, employees, and merchants. (*Id.* at 9-10.)[3] The Court noted that Plaintiff may instead move for monetary damages for any losses that stem from such solicitation. (*Id.* at 11.)[4]

[2] The Employment Agreement contained post-employment covenants prohibiting Defendant from disclosing confidential information to competitors or using such information to solicit Plaintiff's customers, merchants, and employees. (Employment Agreement, Ex. A, ECF No 1.) For example, the Agreement provides, in pertinent part, that "[d]uring the period of his/her employment with Company [Plaintiff] and for a period of twelve (12) months after the termination of employment for any reason (including but not limited to termination with or without Cause), Employee [Defendant] hereby covenants that he/she will not, directly or indirectly, solicit, entice or induce any Customer (as defined below) to (A) become a merchant of any other person or entity engaged in any business activity that competes with any business conducted by Company at any time during the period of Employee's [Defendant]'s employment with Company, or (B) cease doing business with Company." (*Id.* at 2.)

[3] The Court reasoned that such a permanent injunction would be unnecessary to enforce certain non-solicitation clauses that had either expired, or would expire soon after, the date of the May 2022 Opinion. (*Id.*)

[4] In its prior Motion, Plaintiff reserved its right to seek monetary damages against Defendant due to ongoing non-party discovery. (ECF No. 9-1.)

On September 30, 2022, Plaintiff filed a Motion for Final Default Judgment seeking monetary damages against Defendant. (ECF No. 16.) Thereafter, through a series of text orders, the Court directed Plaintiff to submit written updates regarding the status of its efforts to obtain discovery from non-party PayCompass LLC ("PayCompass"), Defendant's new employer. (ECF Nos. 18, 20, 22, 24.) PayCompass is an Arizona entity and a direct competitor of Plaintiff. (Schuh Decl. ¶ 25, ECF No. 28-4.) Plaintiff sought discovery from PayCompass to obtain financial information that would allow it to determine the amount of money Defendant was unjustly enriched due to his violation of the Employment Agreement. (*See generally* ECF No. 23.) It appears, however, that PayCompass has resisted compliance with Plaintiff's subpoenas and other attempts at discovery. (*See, e.g.*, ECF Nos. 17, 19, 21, 23.) On March 7, 2023, accordingly, the Court administratively terminated Plaintiff's Motion for Final Default Judgment to afford Plaintiff adequate time to obtain the necessary information from PayCompass to support its claim for monetary damages. (ECF No. 25.)

Since then, Plaintiff has obtained certain discovery about the specific customers that Defendant unlawfully solicited and moved to his new employer in violation of the Employment

Agreement. (*See, e.g.*, ECF Nos. 26, 29.)[5] Specifically, Plaintiff has obtained a list of the names of merchants associated with Defendant and his employment at PayCompass. (ECF No. 29.) Using this information to revise its damages calculation, Plaintiff now renews its Motion for Final Default Judgment seeking a total of $310,383.25 in damages, consisting of $225,282.44 in lost profits and $85.100.81 in attorneys' fees. (ECF No. 28.)

## II. LEGAL STANDARD

"Default does not establish liability for the amount of damages claimed by the plaintiff." *Trucking Emps. of N.J. Welfare Fund, Inc.-Pension Fund v. Caliber Auto Transfer, Inc.*, No. 08-2782, 2009 WL 3584358, at *3 (D.N.J. Oct. 27, 2009) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974) ("While a default judgment constituted an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.")). Instead, where a court enters a default judgment, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). Thus, the Court must conduct "an inquiry in order to ascertain

---

[5] In related proceedings in the District of Arizona, the Honorable Judge John Tuchi, U.S.D.J., ordered PayCompass to provide all responsive documents in compliance with Plaintiff's subpoenas by February 21, 2023. *Above and Beyond - Bus. Tools & Servs. for Entrepreneurs, Inc. v. Trumbo*, No 22-18 (D. Ariz. Jan. 18, 2023). The Court takes judicial notice of that case. *See Mansfield v. Newark Public Sch.*, No. 19-12318, 2020 WL 113978, at *2 (D.N.J. Jan. 9, 2020) (stating that a court may take judicial notice of another court's opinion for the existence of that opinion). It appears, however, that PayCompass has yet to produce complete responses to some of Plaintiff's discovery requests. (ECF No. 29.) In addition to PayCompass, Plaintiff also subpoenaed records from Priority Payment Systems LLC ("Priority"), a payment processor for PayCompass. (Fialkoff Decl. ¶ 4, ECF No. 28-1.) Plaintiff contends that Priority has relevant sales activity records for Defendant related to his employment by PayCompass. (*Id.*) In response, on June 24, 2022, Priority produced an Excel spreadsheet that identified all the merchants credited to Defendant for purposes of awarding commissions and other compensation arising out of Priority's business relationship with PayCompass. (Priority Decl. ¶ 4, ECF No. 28-3.)

the amount of damages with reasonable certainty." *Trucking Emps. of N.J. Welfare Fund*, 2009 WL 3584358, at *3 (quoting *Credit Lyonnais Sec. (USA) Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).

"The district court has considerable latitude in determining the amount of damages." *Super 8 Worldwide, Inc. v. Urmita, Inc.*, No. 10-5354, 2011 WL 2909316, at *2 (D.N.J. July 18, 2011) (citations omitted). Under Federal Rule of Civil Procedure 55(b)(2)(B), the district court may conduct hearings in order "to determine the amount of damages." Fed. R. Civ. P. 55(b)(2)(B). Damages may be determined without a hearing, however, where there is a basis for the damages specified in the default judgment, *Malik v. Hannah*, 661 F. Supp. 2d 485, 493 (D.N.J. 2009) (citations omitted), or the amount claimed is "capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Bds. of Trs. of Operating Eng'rs Loc. 825 Welfare Fund v. Robert Silagy Landscaping Inc.*, No. 06-1975, 2006 WL 3308578, at *4 (D.N.J. Nov. 13, 2006) (citations omitted). "It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." *Cornwell Quality Tools Co. v. Blanco.* No. 16-5086, 2018 WL 2441750, at *2 (D.N.J. May 30, 2018) (quoting *Pope v. United States*, 323 U.S. 1, 12 (1944)).

## III. DISCUSSION

Having already found that default judgment is appropriate (May 26 Op. 7-8), the Court now addresses the question of damages on the instant Motion. In aggregate, Plaintiff seeks $310,383.25 in damages, consisting of $225,282.44 in lost profits and $85.100.81 in attorneys' fees. (Pl.'s Moving Br. 2, ECF No. 28-5.) Based on the declarations and other documents submitted

in support of Plaintiff's Motion for Default Judgment, the Court finds that Plaintiff has demonstrated to a reasonable certainty that it is entitled to the amount it seeks.

**A. Lost Profits**

*First*, the Court addresses Plaintiff's request for $225,282.44 in lost profits arising from Defendant's solicitation of its merchants. (Pl.'s Moving Br. 9.)

In breach of contract cases, "a party who breaches a contract is liable for all of the natural and probable consequences of the breach of that contract." *Pickett v. Lloyd's*, 621 A.2d 445, 454 (N.J. 1993) (citing *Donovan v. Bachstadt*, 453 A.2d 160, 165-66 (N.J. 1982)). Courts in New Jersey often award compensatory damages in breach of contract actions. *Totaro, Duffy, Cannova and Co. v. Lane, Middleton & Co.*, 921 A.2d 1100, 1107 (N.J. 2007) (citing *Donovan*, 453 A.2d at 163). Compensatory damages are intended to recompense the injured claimant for losses due to the breach. *Donovan*, 453 A.2d at 165. "Loss of profits, where based on sound fact and not on mere opinion evidence without factual support, is recognized as a proper measure of damages if 'capable of being estimated with a reasonable degree of certainty.'" *Stanley Co. of Am. v. Hercules Powder Co.*, 108 A.2d 616, 626 (N.J. 1954) (quoting *Rempfer v. Deerfield Packing Corp.*, 72 A.2d 204, 208 (N.J. 1950)). To prove the amount of damages to a "reasonable degree of certainty", a plaintiff must provide "'an affidavit or other documentary evidence' to justify the amount in damages." *Superior Towing & Transp., LLC v. J.B. Hunt Transp., Inc.*, No. 21-900, 2021 WL 4482824, at *4 (D.N.J. Sept. 30, 2021) (quoting *Bryant v. Jackson*, No. 13-2834, 2014 WL 6065714, at *1 (D.N.J. Nov. 13, 2014)).

Here, Plaintiff contends that it is entitled to recover the lost profits associated with each merchant account that Defendant solicited and moved from Plaintiff to his new employer in breach of the Employment Agreement. (Pl.'s Moving Br. 11.) In support of its requested amount of

$225,282.44, Plaintiff submitted the Declaration of Cara A. Fialkoff (Fialkoff Decl.), Declaration of Gregory Schuh (Schuh Decl.), and Declaration of Priority Payment Systems LLC. (Priority Decl.).

First, Plaintiff reviewed the discovery disclosures obtained from PayCompass and Priority to identify merchants associated with Defendant and his employment at PayCompass during Defendant's thirty-month period of non-solicitation upon leaving Plaintiff. (Schuch Decl. ¶ 27; Fialkoff Decl. ¶ 5.)[6] Thirty-nine merchants were identified by Priority as being brought over by Defendant to PayCompass. (Schuch Decl. ¶ 28; Fialkoff Decl. ¶ 7.) Plaintiff then cross-referenced this list of merchants with Defendant's merchant portfolio list as of the date he departed from Plaintiff to confirm that "thirty-nine (39) of those merchants identified . . . were formerly [Plaintiff's] accounts in [Defendant]'s [Plaintiff] merchant portfolio." (Schuch Decl. ¶ 29; Fialkoff Decl. ¶¶ 6, 8.)

Next, Plaintiff calculated the amount of profit lost for each merchant solicited by Defendant and brought over to PayCompass. Specifically, Plaintiff obtained the average monthly margin (*i.e.*, the amount of profit relative to revenue) for each merchant account it lost to Defendant and PayCompass. (Schuch Decl. ¶ 31.) The monthly margin represents the value of lost profits per merchant per month. It then multiplied the average monthly margin by thirty months, the total amount of time Defendant was prohibited from soliciting Plaintiff's merchants under the Employment Agreement (*Id.*) Using this calculation, Plaintiff represents that the total value of the

---

[6] Pursuant to the Employment Agreement, Defendant was prohibited from soliciting Plaintiff's merchants for a period of thirty months upon leaving the company on July 20, 2020. (Employment Agreement 2.)

thirty-nine merchant accounts it lost due to Defendant's conduct during the thirty-month period of non-solicitation was $225,282.44. (*Id.* at ¶ 33.)[7]

Upon reviewing Plaintiff's evidence in connection to its loss of profits claim, the Court finds that Plaintiff's lost profits calculation and supporting documentation are sufficient to support the total amount in lost profits it seeks to a "reasonable degree of certainty." Thus, Plaintiff is entitled to $225,282.44 in lost profits resulting from Defendant's breach of contract.

**B. Attorneys' Fees**

*Second*, the Court addresses Plaintiff's claim for attorneys' fees in the amount of $85,100.81. (Pl.'s Moving Br. 10.)

In New Jersey, "a prevailing party" can recover attorneys' fees "if they are expressly provided for by statute, court rule, or contract." *Litton Indus., Inc. v. IMO Indus., Inc.*, 982 A.2d 420, 427 (2009) (quoting *Packard-Bamberger & Co. v. Collier*, 771 A.2d 1194, 1202 (2001)). Here, Plaintiff contends it is entitled to attorneys' fees pursuant to the Employment Agreement, which provides that "[i]n any suit brought by one party against the other arising from, relating to or in connection with this Agreement, the prevailing party will be entitled to reasonable attorney's fees, costs of suit and fees." (Employment Agreement 4.) Further, based on the Court's partial grant of default judgment as to Defendant's liability (May 26 Op. 14), Plaintiff can be deemed a

[7] Plaintiff submitted the spreadsheet it created including the redacted list of merchants, their average monthly margin for the months prior to the month they terminated, and the summation of the value of all the lost profits for the merchant accounts unlawfully solicited that are not processing with PayCompass. (Schuch Decl. ¶¶ 32, 34.) This spreadsheet has four columns, "Merchant Number," "Name of Merchant," "Average Monthly Margin," and "Value of Merchant (30 Times Avg. of Monthly Margin." (Schuch Decl., Ex. A, ECF No. 28-4.) The bottom of the spreadsheet has a row which shows the sum from the mathematical calculations in the spreadsheet, a total of $225,282.44 in lost profits. (*Id.*)

"prevailing party" such that it is entitled to reasonable attorneys' fees under the Employment Agreement.

Next, the Court must determine whether the requested amount of attorneys' fees is reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("It remains for the district court to determine what fee is 'reasonable.'"). The Supreme Court has stated that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* The result of this calculation is strongly presumed to yield a reasonable fee. *See Washington v. Phila. County Ct. of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996) (citations omitted). "The general rule is that a reasonable hourly rate is calculated according to the prevailing market rates in the community." *Id.* (citations omitted).

The party seeking attorneys' fees bears the burden of proving that the requested fees are reasonable. *E. Constr. & Elec., Inc. v. Universe Techs., Inc.*, No. 10-1238, 2011 WL 53185, at *6 n.3 (D.N.J. Jan. 6, 2011) (citing *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)). To satisfy this burden, the party requesting attorneys' fees must submit evidence "supporting the hours worked and the rates claimed." *Id.* (quoting *Rode*, 892 F.2d at 1183). Further, the party must also establish that the claimed hourly rate is reasonable by submitting evidence of "the prevailing market rates in the relevant community." *Id.* (quoting *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 (3d Cir. 2005)). To determine "the prevailing market rates in the relevant community," a court "must assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Interfaith Cmty. Org.*, 426 F.3d at 708 (quoting *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001)).

Here, in support of the amount of attorneys' fees it seeks, Plaintiff provided the Court with copies of invoices for the legal fees and expenses it incurred in connection with this case from August 11, 2020 through February 28, 2023. (Davis Decl. ¶¶ 5-6, 8-11; *see also* Davis Decl., Exs. A, C.)[8] It also provided a summary of the attorneys' fees it incurred as follows: (1) $3,169 billed by Law Offices of Peter N Greenfeld P.C. ("Greenfeld"), Plaintiff's local Arizona counsel; and (2) $81,931.81 billed by Santomassimo Davis LLP, the law firm representing Plaintiff in this matter. (*Id.* Ex. B.)

In support of the amount of $3,169 for the services of Greenfeld, Plaintiff submitted the Declaration of Peter N. Greenfeld, Plaintiff's local Arizona counsel in the related proceedings in the District of Arizona to compel PayCompass to comply with Plaintiff's subpoena. (Davis Decl. Ex. C, ECF No. 28-2.) Greenfeld also submitted a copy of his invoices for legal fees and expenses incurred in the related Arizona matter from March 25, 2022, through March 20, 2023. (*Id.* ¶¶ 6-9.) Greenfeld further states that he charged Plaintiff a discounted hourly rate of $200, which he believes is "well below the reasonable standard rates and fees charged in this market for cases of this type and complexity." (*Id.* ¶¶ 17, 19, 23-24.) For instance, Greenfeld's hourly rate for his services is $455. (*Id.* ¶¶ 17, 25.)[9]

Next, in support of the amount of $81,931.81 billed and paid to Santomassimo Davis LLP, Plaintiff submitted the Declaration of Anthony J. Davis, the founder of Santomassimo Davis LLP. (Davis Decl.) With respect to the hourly rate, Davis states that the attorneys at his firm have

---

[8] Each invoice record provides the date of services, the identity of the person in the firm that provided the services with a detailed description of the services rendered or activity completed, a tally of the hours spent, the rate charged, and the total cost. (Davis Decl. ¶ 7; *see also* Davis Decl., Exs. A, C.)

[9] Greenfeld also submits that he "reduced the hours spent on particular tasks by me and my paralegal who were working on this case." (Greenfeld Decl. ¶ 16.)

rendered legal services on Plaintiff's behalf at an hourly rate of $395. (*Id.* ¶ 19.) He further states that his firm typically charges a higher rate of $455 for similar litigation matters. (*Id.*) Davis also submits that he believes that an hourly rate of $455 "is consistent with, or less than, the rates that other commercial litigation attorneys of similar experience and expertise charge in New Jersey." (*Id.*) Further, Davis details the background and unique billing rates of the other attorneys involved with the case who are shown in the invoice records. (*Id.* ¶¶ 23-55.)[10]

Here, Plaintiff has submitted detailed documentation that supports the hours worked and the rates claimed. The invoices outline the services and hours rendered by Plaintiff's attorneys in this matter, in addition to their rates. Further, the invoices show that the amount of legal work related to this case and the related Arizona proceeding was not trivial. *See, e.g., Branch Banking & Tr. Co. v. Angino Law Firm, P.C.*, 809 F. App'x 102, 104 (3d Cir. 2020). Moreover, the hourly rates billed to Plaintiff by each of its attorneys were discounted from the rates each firm typically charged for similar litigation matters. For instance, Davis and Greenfeld both declared that the typical hourly rate of $455 that both their firms charge is consistent with the prevailing market rates in New Jersey and Arizona. The Court, therefore, finds that the expended hours and hourly rates claimed of $200 and $395 are reasonable, and properly supported. *See, e.g.*, *Accurate Builders Ltd. Liab. Co. v. Rise Concrete LLC*, No. 22-4911, 2023 WL 2645054, at *3 (D.N.J. Mar. 27, 2023).

Because the calculation provided by Plaintiff is reasonable for the services performed, the Court, accordingly, finds that Plaintiff is entitled to $85.100.81 in attorneys' fees.

---

[10] Davis also notes that the majority of paralegal time was not billed to Plaintiff. (Davis Decl. ¶ 18.)

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Default Judgment is granted. Plaintiff is entitled to monetary damages from Defendant in the amount of $310,383.25. An appropriate order follows.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE